### No. 9248.

### THE STATE EX REL. NEW ORLEANS GAS LIGHT COMPANY VS. THE CITY OF NEW ORLEANS.

A contract with the city of New Orleans passed after the adoption of the constitutional amendment of 1874, was restricted for satisfaction to the revenues of the year and imposed no obligation upon the city to exercise in the future the then existing power of taxation in order to pay it.

The Article 209 of the Constitution of 1879, limiting the rate of municipal taxation, violated no obligation of such a contract; and as against a judgment founded thereon, the

Constitution is entitled to as plenary effect as if the judgment had not been founded on contract at all.

The judgment creditor, therefore, cannot, by mandamus, compel the city to levy a tax for his satisfaction in excess of the constitutional limitation.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*T. J. Semmes* and *Payne* for the Relator, Appellant.

*W. H. Rogers*, City Attorney, and *Wynne Rogers*, Assistant City Attorney, for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J. Relator is holder of a judgment against the city of New Orleans rendered on June 12, 1878.

This judgment was based on two contracts for lighting the city with gas: one dated December 31, 1874, by which relator agreed to light the city during the year 1875; the other dated December 17, 1875, by which it agreed to light the city during the years 1876 and 1877.

Appropriations for the payment of relator were duly made on the city budgets for 1875, 1876 and 1877; and the power of taxation for current city expenses possessed by the city, was exhausted during each of said several years.

Relator setting forth its contracts and judgment and alleging that, at the date of its contracts, the city possessed a power of taxation for current city expenses of one and one-quarter per cent, which, so far as necessary to the satisfaction of his contract, continues to exist unimpaired by subsequent legislative and constitutional limitations, seeks relief similar to that recently granted by us in the case of State *ex rel.* Marchand vs. City, 37 Ann., not yet reported.

In other words, while the city's power of taxation for general purposes is now limited by the Constitution of the State to one *per cent*, he asks a mandamus compelling the city to levy one-quarter of one per cent in addition thereto for the satisfaction of his judgment.

This relator's case is significantly differenced from that of Marchand by the fact that, at the date of relator's contracts, the constitutional amendment of 1874 had already been adopted and promulgated.

That amendment declared: "The city of New Orleans shall not hereafter increase her debt in any manner or form or under any pretext. And after the first day of January, 1875, no evidence of indebtedness or warrant for the payment of money, shall be issued by any officer of said city except against cash actually in the treasury," etc.

438    SUPREME COURT OF LOUISIANA.

State ex rel. Gas Light Company vs. City of New Orleans.

We have, heretofore, carefully considered the meaning and effect of this amendment, saying: "It rendered it impossible for the city, by any voluntary act, to incur increased debt, 'in any manner or form or under any pretext.' All persons were fully charged with notice that, whatever services they might render, whatever supplies they might furnish, they could never become creditors of the city of New Orleans, because she was utterly incompetent to contract additional debt. If they choose to deal with her, without exacting present payment, upon the basis of expected revenues appropriated to their payment, they simply acquired rights or claims upon that fund, dependent exclusively on its realization and only payable out of the same when converted into cash actually in the treasury." Tax-payers' Association vs. N. O. 33 Ann. 567.

Since the foregoing decision we have had several cases before us involving disputed claims between the city and creditors claiming under contracts made under the dominion of the amendment of 1874, and, in rendering judgments in favor of the creditors, we have invariably restricted them to payment out of the revenues of the year which the services or supplies were furnished. Eager vs. New Orleans, 36 Ann. 937, and other cases.

It is claimed, however, that as relator's judgment is absolute and contains no such restriction, it is conclusive as to the validity of the debt and entitles the judgment to all lawful means of satisfaction.

Without concluding ourselves on this question, we may, for the sake of argument, admit it.

Then, the question arises: what are lawful means of satisfaction? Has the relator a right to require the city to levy a tax in excess of the rate to which her power of taxation is limited by the Constitution of the State?

To maintain such right, relator must show that the constitutional limitation violates the obligations of a contract entered into prior to its adoption. This requirement is imperative.

Relator points to a contract passed, indeed, prior to the Constitution; but that contract imposed upon the city no obligation to exercise, in any future year, the power of taxation then possessed, or indeed, any taxation whatever, for the satisfaction of the contract, beyond that for the year in which it was passed.

"A contract is impaired," says the U. S. Supreme Court, " when the means by which, at the time of its execution, it could be enforced, that is, by which the parties could be obliged to perform it, are rendered

less efficacious by legislation operating directly upon those means." Wolff vs. New Orleans, 13 Otto, 367.

A remedy which did not exist cannot be impaired.

It cannot possibly be said, therefore, that the provision of the present Constitution violates any obligation of relator's contract, and it must submit to its unquestionable authority.

Conceding that relator's judgment establishes the validity of the debt, yet as it is founded on a contract, the obligations of which are not impaired by Article 209 of the Constitution of 1879, that article is entitled to as full execution against it as if its judgment had not been founded on contract at all.

The best position relator can claim is to have his judgment placed upon a parity with that of Folsom Bros. vs. City, 32 Ann;—evidence, if you will, of an absolute valid indebtedness, entitled to satisfaction by all lawful remedies, but subjected to the domination of the existing Constitution of the State, which, though passed subsequently to the contract, violates no obligation of the latter.

For the reasons there given and approved by the Supreme Court of the United States, the relief here sought must be denied.

This renders it unnecessary to consider any other questions raised in the argument of the case.

Judgment affirmed.

---

### On Application for Rehearing.

This case is clearly distinguishable from that of Nelson vs. St. Martin Parish, 111 U. S. 716.

The judgment sought to be enforced in the latter case settled affirmatively not only that the debt claimed under the contract was due, but also that the creditor was entitled to the tax claimed for its enforcement.

This appears from the statement of facts and also from the following clause of the opinion: "The judgment being absolute and the plaintiff therein being by law at the time entitled to a decree that the assessing and collecting officers of the parish should assess and collect a tax sufficient to pay it, and *such decree having been entered,* and those officers having failed in their duty, the relator was entitled to the writ prayed."

But in the instant case, relator's judgment settles nothing but the existence of the debt. It neither considers nor determines his right to a tax for its satisfaction. That remains an open question which we are, for the first time, called on to determine.

We have no need to go outside of the opinion in the Nelson case to find a lucid expression of the very doctrine which we have applied in our original opinion.

Thus the Supreme Court of the United States says: "As the contract clause of the Constitution was intended to secure the observance of good faith in the stipulation of parties, against State action, it could not be invoked when no such stipulation existed. * * * It was, therefore, entirely within the competency of the Supreme Court of Louisiana to authorize an inquiry into the cause of action on which Nelson's judgment was rendered, when he prayed for its enforcement by proceedings which were authorized by legislation existing at its date, but subsequently repealed. Whether such repeal was effectual to deprive him of the process prayed, depended upon the question whether the judgment was founded upon a contract, *the obligation of which the State was prohibited from impairing.* By the obligation of a contract is meant the means which, *at the time of its creation,* the law affords for its enforcement. The usual mode by which municipal bodies obtain the funds to meet their pecuniary engagements is taxation. Accordingly, *when a contract is made upon the faith that taxes will be levied,* legislative repealing or modifying the taxing power of the corporation, so as to deprive the holder of the contract of all adequate and efficacious remedy, is within the constitutional prohibition."

These germinal principles this Court has accepted and has consistently enforced. To depart from them now would be to fly in the face of our own precedents; and nothing could be farther from our conscious intention.

But we find ourselves here called on to determine whether a provision of the Constitution violates the obligations of relator's contract.

How is this question to be determined? If the contract was entered into "upon the faith that taxes would be levied," says the Supreme Court, "legislation repealing or modifying the taxing power, so as to deprive the holder of adequate remedy, is within the constitutional prohibition." This affirmative is pregnant with the negative that, if the contract were not entered into upon such faith, but, on the contrary, with full knowledge based on the fundamental law of the State that such taxation would not and could not be resorted to, the subsequent legislation is not within the constitutional prohibition.

If, as in the Nelson case, the judgment had decreed that relator was, under its contract, entitled, as part of its legal obligations, to demand the exercise of the then existing power of corporate taxation, the powerful shield of *res judicata* would have protected it against all question

that such *was* the obligation of the contract and that it could not be impaired by subsequent legislation reducing the taxing power. But we encounter no such bar. The judgment does not touch that question. It arises before us as a new and original question. We do not assume to retry the original case. We touch no matter determined by the judgment. But when we are asked to enforce the judgment by a particular remedy which is now prohibited by the Constitution of the State, we simply inquire whether that remedy entered into the obligations of relator's contract.

Finding that this inquiry is proper, that it is open and in no manner concluded by relator's judgment, and finding that by virtue of the fundamental law of the State in force at the date of the contract this remedy was absolutely excluded from its obligations, our duty is clear to deny to relator the privilege of overriding the mandate of the State Constitution which, except in so far as it conflicts with the Federal Constitution, is binding on it as upon ourselves and all other citizens.

It would be, indeed, a grievous calamity if, through the mere omission of a judgment to pass upon a question which was not before it, this debt-burdened and tax-ridden city could be compelled to levy an extra tax to satisfy such a debt.

Rehearing refused.